No. 3--95--0365

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1997

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 13th Judicial Circuit,

 ) La Salle County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 94--CF--322

 ) 

RALPH H. SYVERSON,              ) Honorable

                                )  H. Chris Ryan 

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

Following a jury trial, defendant Ralph H. Syverson was found guilty of home invasion (720 ILCS 5/12--11(a)(1) (West 1994)) and guilty but mentally ill of second degree murder (720 ILCS 5/9--2(a)(1) (West 1994)).  Following a sentencing hearing, the trial court concluded that consecutive sentences were manda­tory.  The court then sen­tenced the defendant to a 15-year term of impris­on­ment for home inva­sion and a consecu­tive 10-year term for second degree murder.  The defendant appeals, arguing that the trial court erred in conclud­ing that consecu­tive sen­tences were manda­tory.  We af­firm. 

FACTS

At trial, it was established that the defen­dant was an Illinois state troop­er.  In 1976, he married Marianne Wielgopolan, and the couple had one child.  In May of 1994, Marianne told the defen­dant that she had been seeing another man and wanted a divorce.  Approxi­mately one week later, Marianne moved out of the marital home.

Over the next few months, the defendant attempted to recon­cile with Marianne.  In late July of 1994, Marianne agreed to go to joint counseling with the defendant.  She also told the defendant that she was leaving her par­amour, Gale Rapp.  However, a few days later Marianne began to see Rapp again.  When she in­formed the defendant, he became angry.

On August 14, 1994, the defendant arrived at Marianne's apart­ment in the early morning.  He brought doughnuts and asked Marianne to give him another chance.  After about an hour, the defendant left.

The next day, Rapp came over to Marianne's apartment.  The two went to bed around midnight.  They awoke in the early morning to find the defendant standing in the bedroom doorway.  Marianne said, "How in the hell did you get in here?"  The defen­dant then walked over to the bed and said: "Gale Rapp, I am--I am here to kill you, Gale Rapp.  You ruined my life.  We were going to go to joint counseling."

At that point, the defendant brought out his service revolv­er.  Marianne and Rapp both reached for the gun and a struggle ensued.  The defendant fired a shot and Rapp fell back, mutter­ing some­thing.  The defendant fired a few more shots and Marianne ran out of the bedroom to the kitchen.  After a while, the defendant stopped shooting, came out of the bedroom, and put his gun on a bar stool in the living room.  He then telephoned the Ottawa police, who arrived at the scene shortly there­after.

The defendant was found guilty of home inva­sion and guilty but mentally ill of second degree murder.  A sentenc­ing hearing was held at which the trial court found that consecutive sentenc­es were mandatory.  The court then imposed a 15-year term of impris­onment for home inva­sion and a consecu­tive 10-year term of imprison­ment for second degree murder.

ANALYSIS

On appeal, the defendant argues that the trial court erred in finding that consecutive sen­tences were manda­tory.  The defen­dant correctly notes that consec­u­tive sentences are mandato­ry if: (1) the offenses "were commit­ted as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective"; and (2) one of the offens­es "was a Class X or Class 1 felony and the defen­dant in­flict­ed severe bodily injury."  730 ILCS 5/5--8--4(a) (West 1994).  The defendant contends that neither of these prereq­uisites was met in the instant case.

I.

 The defendant first argues that he did not commit the home invasion and the murder "as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."

After reviewing the applicable case law, it is apparent that there is some uncer­tain­ty regarding the meaning of "a single course of con­duct during which there was no substantial change in the nature of the criminal objective."  730 ILCS 5/5--8--4(a) (West 1994).  Some cases have suggested this language is unclear.  See 
People v. Bole
, 155 Ill. 2d 188, 193, 613 N.E.2d 740, 742 (1993) ("It is unclear from the statute whether the additional language, 'during which there is no substantial change in the nature of the crimi­nal objective,' is meant to define, or de­scribe, the phrase 'single course of conduct,' or whether it is intended instead to limit that phrase.").  

Other cases have used various tests in attempting to explain what consti­tutes a "single course of conduct."  See, 
e.g.
, 
People v. Harris
, 220 Ill. App. 3d 31, 32, 580 N.E.2d 903, 904 (1991) (using an "inde­pendent motiva­tion" test); 
People v. Fritz
, 225 Ill. App. 3d 624, 629, 588 N.E.2d 307, 310-11 (1992) (using an "overarching crimi­nal objec­tive" test); 
People v. Kagan
, 283 Ill. App. 3d 212, 220, 669 N.E.2d 1239, 1245 (1996) (using both "indepen­dent criminal motiva­tion" lan­guage and "overarching criminal objective" lan­guage).  Recent­ly, the merits of these tests have been called into ques­tion.  
People v. Strickland
, 283 Ill. App. 3d 319, 324, 668 N.E.2d 1201, 1204, (1996) ("appel­late courts have not devel­oped any consistent or coherent analy­sis of when courses of conduct are 'related' as opposed to 'separate[.]'"); 
People v. Guzman
, 276 Ill. App. 3d 750, 759, 658 N.E.2d 1268, 1275 (1995) ("The appro­priate test for determining what consti­tutes a single course of conduct under section 5--8--4 is some­what unclear.").

The problem with the above-noted tests is that they place undue empha­sis on a rather amorphous concept, a defendant's motiva­tion, while de-emphasizing other relevant factors.  We believe it is better to consid­er the totali­ty of the circum­stances, with the defendant's motive being only one of several factors the court should consid­er.  See, 
e.g.
, 
People v. Bilyeu
, 102 Ill. App. 3d 130, 132, 429 N.E.2d 912, 913 (1981); 
People v. Lee
, 41 Ill. App. 3d 502, 505, 354 N.E.2d 543, 546 (1976).  Among the other factors the court should consid­er are:  (1) the time laps­e between each offense (
People v. Bole
, 155 Ill. 2d 188, 613 N.E.2d 740 (1993)); (2) the proxim­i­ty in loca­tion of the offens­es (
People v. Paino
, 137 Ill. App. 3d 645, 484 N.E.2d 1106 (1985)); and (3) the number of vic­tims (
People v. Lindsay
, 67 Ill. App. 3d 638, 384 N.E.2d 793 (1978)).

Although each of these factors should be considered by the trial court, no single factor is neces­sarily determi­na­tive.  See, 
e.g.
, 
People v. Embry
, 249 Ill. App. 3d 750, 619 N.E.2d 246 (1993) (sexual as­saults with multi­ple victims found to be a single course of conduct); 
Bole
, 155 Ill. 2d 188, 613 N.E.2d 740 (sexual assaults involv­ing only one victim found to be more than a single course of con­duct).  Moreover, the trial court's deter­mi­na­tion will be upheld as long as there is evi­dence to support it.  
People v. Morris
, 237 Ill. App. 3d 140, 603 N.E.2d 1196 (1992).

In the case at hand, the record reveals that both offenses: (1) occurred seconds apart; (2) oc­curred in a single location; (3) were committed against a single victim, Gale Rapp; and (4) appeared to have a single motivation, the desire to elimi­nate Gale Rapp as a threat to the defendant's marriage.  Under these circum­stances, we find that there was substan­tial evidence support­ing the trial court's determina­tion that the defendant committed both offenses during a "single course of conduct during which there was no sub­stan­tial change in the nature of the criminal objec­tive."

II.

The defendant also contends that the second prerequisite for mandatory consec­utive sen­tences was lacking because it was not estab­lished that "one of the offens­es for which defendant was convict­ed was a Class X or Class 1 felony and the defendant inflicted severe bodily inju­ry."  730 ILCS 5/5--8--4(a) (West 1994).

The defendant argues that the home invasion, while a Class X felony, could not be used as the "triggering" felony because it did not "involve" the infliction of severe bodily injury.  That offense was complete, the defendant contends, when the defendant entered his wife's apartment and threatened her and Rapp.
(footnote: 1)  Since that offense did not involve injury to anyone, it does not satisfy the second prerequisite, argues the defendant.  Likewise, the second degree murder convic­tion, a Class 1 felony, fails to qualify, contends the defendant, because "severe bodily injury" is an inherent element of the offense.  The defendant succeeds with his argument only if this Court finds that neither of the defendant's convictions qualify as a triggering Class X or Class 1 felony requiring consec­u­tive sen­tenc­ing in this case.

First we consider whether the Class X home invasion quali­fies.  The defendant fails to cite, and we have not found, any authority for his position.
(footnote: 2)  The plain lan­guage of the statute does not require that the injury be inflicted as part of the trigger­ing felony.  So long as a Class X or Class 1 felony is committed 
and
 severe bodily injury is inflicted during a single course of con­duct, consecutive sentenc­es are required.  Having already deter­mined that the defendant committed both offenses during a single course of conduct, we find that the defendant's conduct fell square­ly within the requirement of section 5--8--4(a) that the defen­dant commi­t a "Class X or Class 1 felony and [in­flict] severe bodily inju­ry."  Having so decided, it becomes unneces­sary for us to consider the defendant's additional argu­ment that his Class 1 felony second degree murder conviction could not be used as the trig­gering felony.  The trial judge was correct in his position that consecutive sentences were required in this in­stance.

CONCLUSION

For the reasons set forth above, the judg­ment of the circuit court of La Salle County is af­firmed.

Affirmed. 

SLATER, J. concurs.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent.  I would hold that the home invasion and the murder were not part of a "single course of conduct during which there is no substantial change in the nature of the criminal objective."  730 ILCS 5/5--8--4(a) (Michie 1994).  The relevant statutory language provides:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was con­victed was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a viola­tion of Section 12-13 of 12-14 of the Criminal Code of 1961 (footnote omitted), in which event the court shall enter sentences to run consecutively."  730 ILCS 5/5--8--4(a) (Michie 1994).  

The issue in this matter is whether the home invasion and the second degree murder were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.  My review of the record leads me to conclude that these offenses were not part of a single course of conduct.  

While, I agree with the majority's position that some degree of  uncertainty exists as to the meaning of this statutory provision, I do not agree that the application of a "totality of the circumstances" brings any greater decree of clarity to the issue than the other methods of analysis articulated by other courts.  Rather, I believe that the language of subsection 5--8--4(a) and the case law interpreting that subsection do not mandate consecutive sentences where there are separate and distinct acts or where various acts are separately motivated.  See, 
e
.
g
., 
People v. Baker
, 133 Ill. App. 3d 620 (1985).  In other words, where there is an "independent motivation" for the various acts, consecutive sentences are not mandated.  See, 
e
.
g
. 
People v. Harris
, 220 Ill. App. 3d 31, 32 (1991).

Here, the record is clear that the jury found that defendant's acts were not within a "single course of conduct during which there was no change in the nature of the criminal objective."  The jury's verdicts on each of the charged offenses can lead to only one conclusion.  The jury found, not a single course of conduct on the part of the defendant, but rather two separate and distinct criminal acts.  The jury found the defendant guilty -- simply guilty, not guilty but mentally ill -- of home invasion, thereby finding that the defendant, without mental impairment of any kind, had entered his wife's apartment and threatened harm upon persons within the apartment.  The jury also found that the defendant, while suffering from a mental impairment -- the disassociative reaction -- then proceeded to kill Rapp while in the heat of passion.  

There is only one conclusion that can be drawn from the jury's conflicting verdicts on the two offenses: that each offense was motivated by a completely different criminal objective, and thus the two offenses were not part of a single course of conduct.  Clearly, the jury found that the defendant acted under no mental impairment when he broke into the apartment while armed with a dangerous weapon, but he was motivated to shoot Rapp by something that happened while the defendant was in the apartment, which  acted upon his mental impairment to produce a completely different criminal objective from the defendant's objective in entering the apartment.  In other words, the jury's verdicts, guilty of offense of home invasion and guilty but mentally ill of the offense of second degree murder, establish that the defendant entered the apartment without the intent to kill Rapp, but was motivated to kill him only after entering the apartment.  Where independent motivations exist for each offense, consecutive sentences are not mandated by subsection 5/5--8--4(a).  See, 
People v. Williams
, 60 Ill. 2d 1 (1975) (proper finding of independent motivation for offenses where defendant entered building to commit robbery but then wound up killing person in the building).

As I would find that the two offenses for which the defendant was sentenced were not part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, I would not address the issue of whether one of the offenses for which the defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily harm.   

For the foregoing reasons, I would find that the trial court erred in finding that consecutive sentences were mandated by subsection 5/5--8--4(a).  I therefore dissent.  I would remand the matter for the trial court to determine whether consecutive sentences, while not mandatory, were nonetheless otherwise warranted.        

     

FOOTNOTES
1:
The indictment charged that the defendant "[k]nowingly and without authority entered the dwelling place of Marianne Syverson...and while armed with [a firearm] threatened the immi­nent use of force upon persons within such dwelling place."

2:
The case cited by the defendant in support of his argument that the home invasion was not a triggering felony, 
People v. Porter
, 277 Ill. App. 3d. 194, 660 N.E.2d 118 (1995), is distin­guishable from the instant case.  In 
Porter
, the defen­dant was convicted of one count of first degree murder and four counts of attempted first degree murder, involving five separate victims.  Two of the attempted murder victims were unharmed.  The defendant did not dispute the applicability of section 5--8--4(a).  The issue before the court was whether all five of the sen­tences must run consecu­tive­ly or only those for the three felo­nies which involved severe bodily harm to the victims.  The appellate court deter­mined that consecutive sentencing was not applicable for the two offens­es not involving severe bodily injury to a victim. In the instant case, Rapp, the individu­al receiving "severe bodily injury", was the victim of both the felo­nies.