THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE DANIELS, Defendant-Appellant.

First District (2nd Division)   No. 1—87—1466

Opinion filed February 13, 1990.

Paul P. Biebel, Jr., Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Mary Katherine Moore, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

On March 27, 1987, defendant Steve Daniels was convicted of the offense of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) and was sentenced to four years in the custody of the Illinois Department of Corrections. Defendant appeals from his sentence, alleging that the

circuit court erred in denying him probation.

During trial, the State introduced certified copies of defendant's 1983 convictions in the State of Mississippi for burglary, larceny and escape. The Mississippi court had sentenced defendant to serve four years in the penitentiary for burglary and larceny, and two years for escape, the sentences to run concurrently. Accordingly, the circuit judge in the instant case, taking into account defendant's prior out-of-State conviction for burglary, refused to give him probation in reliance on section 5—5—3(c)(2)(F) of the Unified Code of Corrections (Code of Corrections) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(2)(F)), which provides in pertinent part:

> "(2) A period of probation *** shall not be imposed for the following offenses. The court shall sentence the offender to not less than the minimum term of imprisonment set forth in this Code for the following offenses ***:
>
> * * *
>
> (F) A Class 2 or greater felony if the offender had been convicted of a Class 2 or greater felony within 10 years of the date on which he committed the offense for which he is being sentenced."

In refusing to grant probation, the judge noted that section 5—5—3(c)(2)(F) of the Code of Corrections is not limited to felony convictions in Illinois and, indeed, makes no reference to where the previous felony must have been committed. He further noted that another subsection of the same statute explicitly provides that in order to enhance a defendant's offense to a Class X felony, a previous conviction must have originated "in Illinois" (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8)), and that, therefore, the pointed absence of any reference to Illinois in subsection (c)(2)(F) indicates a legislative intent to permit out-of-State as well as Illinois convictions to be a basis for denying probation.

We note that burglary is a Class 2 felony under Illinois law (Ill. Rev. Stat. 1985, ch. 38, par. 19—2(b)), and for a conviction of a Class 2 felony, a sentence of imprisonment may not be less than three years nor greater than seven years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5)).

## I

Defendant faults the trial court's sentencing decision on two grounds. First, he argues that because other enhancement provisions in the Code of Corrections and the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1—1 *et seq.*) limit themselves

to Illinois convictions, they indicate a legislative intent to allow extended-term sentences based only on prior convictions in this State. According to defendant, this intent applies to section 5—5—3(c)(2)(F) despite the absence of any reference to Illinois in that portion of the Code of Corrections. For example, defendant refers to section 5—5—3(c)(7) of the Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(7)), which prescribes a term of natural life imprisonment for a defendant adjudged to be an habitual criminal under section 33B of the Criminal Code. Section 33B—1(a) of the Criminal Code defines "habitual criminal" as follows:

> "§33B—1. (a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified *in Illinois* as a Class X felony or murder, and is thereafter convicted of a Class X felony or murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1(a).)

As another example, defendant refers to section 5—5—3(c)(8) of the Code of Corrections, which provides in pertinent part:

> "(8) When a defendant *** is convicted of a Class 1 or a Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies *in Illinois*, *** such defendant shall be sentenced as a Class X offender." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).

But defendant's reliance on statutory provisions such as those cited above which refer specifically to prior offenses in Illinois militates against his own position, because it has been held that the very absence of any reference to Illinois offenses in section 5—5—3(c)(2)(F) indicates a legislative intent to deny probation to defendants who have been previously convicted of a felony in other jurisdictions. As the State points out, in *People v. Harman* (1984), 125 Ill. App. 3d 338, 465 N.E.2d 1009, the second district held that pursuant to section 5—5—3(c)(2)(F) the circuit court may not give probation to a defendant who in the past 10 years has been convicted in another jurisdiction of the equivalent of a Class 2 felony under Illinois law. The defendant in that case had a prior conviction for burglary in Pennsylvania.

Setting forth the rules governing statutory interpretation, the *Harman* court held:

> "While penal statutes must be strictly construed [citation], and any ambiguity should be resolved in the defendant's favor, prime consideration in construing a legislative enactment is to

ascertain and give effect to the legislative intent. [Citation.] Where the statutory language is clear and unambiguous, the statute must be given effect without resort to other aids for construction. [Citation.] Where, however, the language is susceptible of different interpretations, to ascertain a legislative intent, it may be necessary to look beyond express words and to consider the purpose to be served by the statute. [Citations.] Also, where the legislature has provided reasonable definitions of any terms within its enactment, such definitions for the purposes of its acts will be sustained. [Citations.] Furthermore, separate acts with separate purposes need not define similar terms in the same way. Therefore, the meaning of words within the statute is dependent upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction." *People v. Harman*, 125 Ill. App. 3d at 344-45, 465 N.E.2d at 1014-15.

In applying these principles to section 5—5—3(c)(2)(F), the court in *Harman* held that because the definition of an "habitual criminal" is found in the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1(a)), it has little bearing on the meaning of section 5—5—3(c)(2)(F) of the Code of Corrections, which is a separate enactment with separate legislative purposes. Turning for comparison to other provisions within the Code of Corrections which specifically require prior Illinois convictions for extending sentences (*e.g.*, Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3(c)(6), 1005—5—3.2(b)(1)), the court found that the absence of such a limitation in the probation section shows that the legislature intended a different result. (See also *Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1105-06, 398 N.E.2d 1150, 1153 ("where the legislature uses certain words in one instance, and different words in another, different results were intended").) When defendant argues that the legislature's restriction to prior Illinois convictions in other sections of the Code of Corrections implies the same restriction in section 5—5—3(c)(2)(F), he does violence to the well-established principle of statutory construction, *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of another) (see *Condell Hospital v. Illinois Health Facilities Planning Board* (1988), 124 Ill. 2d 341, 366-67, 530 N.E.2d 217, 229; *Chicago, Milwaukee & St. Paul R.R. Co. v. Dumser* (1884), 109 Ill. 402, 410), which underlies the holding in *Harman*. We regard it as significant that defendant fails to reply to the State's citation and extensive discussion of *Harman* in its brief; nor does defendant

cite or discuss in his brief any other Illinois decision construing section 5—5—3(c)(2)(F). We agree with the *Harman* court that section 5—5—3(c)(2)(F) of the Code of Corrections requires the denial of probation to a defendant who has been convicted outside the State of the equivalent of a Class 2 felony or greater under Illinois law.

## II

■ Second, defendant argues that at the very least the State should have shown that his Mississippi burglary conviction carried a penalty equivalent to a Class 2 felony. Yet, defendant makes no showing that burglary in Mississippi carries a penalty any less than the three- to seven-year range for Class 2 felonies prescribed in the Illinois Code. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5).) We take judicial notice (Ill. Rev. Stat. 1987, ch. 110, par. 8—1003) that Mississippi has nine different types of burglary offenses which carry maximum penalties ranging from 5 to 40 years' imprisonment in the penitentiary. (Miss. Code Ann. §§97—17—19 to 97—17—29, 97—17—33 to 97—17—37 (1972).) Although the record does not indicate under which statutory section defendant was convicted, he was sentenced for the crime of "burglary" to four years' imprisonment, a term well within the range for Class 2 felonies in Illinois. Defendant does not allege that his four-year sentence for burglary in the instant case was otherwise an abuse of the circuit court's broad sentencing discretion. (See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

DiVITO, P.J., and BILANDIC, J., concur.